Judge Napton
delivered the opinion of the court.
This v/as a bill in chancery brought by the judgment creditors of one *443 Warfield to set aside certain conveyances alleged to have been fraudulent as against the complainants.
The complainants, who were creditors of Warfield, had purchased his interest in a tract of land under executions upon two judgments ;—one obtained by themselves against Warfield on the 18th March 1847 and the other obtained by one Cassada on the 13th Oct. 1845.
In the year 1835 Warfield had purchased this tract of land from Bolton (one of the defendants,) and gone into possession, but received no conveyance—a bond for a title upon the payment of the purchase money was given to him. On the 18th Feb. 1845, Warfield assigned this title bond to Shields (the other defendant) who took possession on the 1st March 1845. There is some diversity of- testimony as to the fact, whether Warfield had paid all the purchase money or not. On the 27th April 1846, Bolton conveyed by deed to Shields, the latter having paid off whatever was due from Warfield. This deed was recorded 2nd May 1846.
The bill seeks the interposition of this court upon two grounds. The first is based upon the hypothesis that the transactions above stated were bona fide, and assumes, that under the decisions of this court, the complainants have the better title, because the deed from Bolton to Shields was not recorded until after the judgment of Cassada.
The doctrine in Hill vs. Paul 8 Mo. R. and Reed vs. Austin 9 Mo. R. we consider inapplicable. The judgments of the complainants were not given against the vendor Bolton, but against Warfield, who at the date of the judgments, had no interest either equitable or legal in the land. He never had any legal title, and he had transfered his equitable title to Shields. So that, taking the transaction to have been an honest one, Warfield had nothing upon which the judgement could operate.
The bill however charges that this assignment of Warfield to Shields and the conveyance from Bolton to Shields, were fraudulent in fact and designed to protect the lands in question from the creditors of Warfield. Upon this point there was some testimony, but the circuit court decreed against the complainant. An examination of the testimony preserved in the bill of exceptions, and copied in the statement of the case, will show that there "was no satisfactory proof that Shields* conduct or motives in the transaction were at all questionable; Shields was a creditor of War-field, and had a right to secure himself, and his diligence in procuring the title from Bolton before the judgments against Warfield, could form no just ground for imputing fraud. We shall shall therefore confirm the decree of the circuit court.